IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ROBERT L. SADLER, III, as Executor of | : | NO. 13-7207 |
| the Estate of Robert L. Sadler, Jr., | : | |
|     Defendant. | : | |

MEMORANDUM ORDER

AND NOW, this 30th day of July 2015, upon consideration of defendant Robert L. Sadler III, as Executor of the Estate of Robert L. Sadler, Jr.'s Motion for Partial Summary Judgment (Doc. No. 26), plaintiff United States of America's response thereto (Doc. No. 28), plaintiff's Motion for Summary Judgment (Doc. No. 27), defendant's response thereto (Doc. No. 29), plaintiff's reply (Doc. No. 30), and defendant's sur-reply (Doc. No. 33), it is hereby ORDERED that defendant's Motion is DENIED. It is further ORDERED that plaintiff's Motion is GRANTED. Final judgment shall issue by separate document pursuant to Federal Rule of Civil Procedure 58(a).

I.    Factual Background and Procedural History

Robert L. Sadler, Jr. ("Sadler") died in 2009. (Def.'s Statement of Material Facts ¶ 3 ("Def.'s Stmt."), Doc. No. 26-2.) In 2013, the Internal Revenue Service (IRS), acting through the Attorney General of the United States, brought this action pursuant to 26 U.S.C. § 7402 against Sadler's estate to reduce to judgment Sadler's outstanding income tax liability. (Compl., Doc. No. 1.) The IRS alleged that Sadler's outstanding tax liability for tax years 2001 through 2005,

inclusive of interest and penalties, totaled $42,912.66 at the time the complaint was filed. (Compl. ¶ 12.) Nominal defendant Robert L. Sadler III is the executor of Sadler's estate.

For the tax year 2001, Sadler filed a tax return claiming $0.00 in income tax owed and requesting a refund of the $2,755.00 that he had paid to the IRS in withholdings. (Pl.'s Statement of Material Facts ¶¶ 2–4 ("Pl.'s Stmt."), Doc. No. 26-2.) Similarly, for the tax year 2002, Sadler reported $0.00 in tax owed and requested a refund of $2,059.00 in withholdings. (Id. ¶¶ 7–9.) In both cases, rather than refunding the claimed overpayment, the IRS applied it as a credit to satisfy a deficiency remaining from Sadler's 1994 income taxes, which Sadler had jointly filed with his wife at the time. (Id. ¶¶ 6, 11; 1994 Account Transcript, Pl.'s Mot. Summ. J. Ex. 1, Doc. No. 27; 2001 Account Transcript, Pl.'s Mot. Summ. J. Ex. 2; 2002 Account Transcript, Pl.'s Mot. Summ. J. Ex. 3.) The IRS later performed an examination of Sadler's 2001 and 2002 returns, and determined that he had understated his tax liability. (Notice of Deficiency, Pl.'s Mot. Summ. J. Ex. 6.) It disallowed in full deductions that Sadler had claimed for expenses allegedly incurred from complying with the Americans with Disabilities Act. Sadler had claimed deductions relating to expenses incurred through a program named "MallForAll/ShopN2000/Tax Break 2000," but the IRS concluded that the transactions at issue lacked economic substance and were made solely for the purpose of avoiding tax. (Id.) As a result, in 2005, the IRS assessed a deficiency for the 2001 tax year of $6,539.00, with an additional $1,307.80 in penalties, and a deficiency for the 2002 tax year of $6,059.00, with an additional $1,211.80 in penalties.[1] (Id.; 2001 Form 4340, Pl.'s Mot. Summ. J. Ex. 3; 2002 Form 4340, Pl.'s Mot. Summ. J. Ex. 5.)

---

[1] The penalty amounts consist of an accuracy-related penalty of 20% of the tax assessed pursuant to 26 U.S.C. § 6662. (Pl.'s Stmt. ¶ 18.) Defendant makes no argument challenging these penalties.

According to the Forms 4340[2] submitted by plaintiffs in support of their motion for summary judgment, Sadler filed his 2003 tax return on July 13, 2004. (2003 Form 4340, Pl.'s Mot. Summ. J. Ex. 8.) He reported tax due of $5,491.00 and withholdings of $2,067.00, leaving a balance due of $3,424.00. (Id.) The IRS assessed penalties on Sadler's 2003 income taxes for failure to pre-pay tax and for late payment of tax. (Id.) Sadler submitted his return for the 2004 tax year on August 30, 2005. (2004 Form 4340, Pl.'s Mot. Summ. J. Ex. 10.) He reported taxes due of $6,681.00 and withholdings of $2,742.00, leaving a balancing owing of $3,939.00. (Id.) The IRS assessed penalties for failure to timely file a return, failure to prepay tax, and late payment of tax. (Id.) Sadler submitted his return for the 2005 tax year on July 10, 2006. (2005 Form 4340, Pl.'s Mot. Summ. J. Ex. 12.) His return stated that he owed $6,221.00 in tax and had paid $3,547.00 in withholdings, leaving a deficiency of $2,674.00. (Id.) The IRS again assessed penalties for failure to prepay tax and late payment of tax. (Id.)

After proceedings were stayed in order for the IRS to attempt to locate Sadler's tax returns for tax years 2003 and 2004,[3] the parties filed motions for summary judgment. (Doc. Nos. 26, 27.) Plaintiff seeks to reduce to judgment the entire amount it alleges is due, an amount that as of April 20, 2015 totaled $44,825.54 with accrued interest. (Decl. of Monica S. Rivera ¶ 4, Doc. No. 27-5.) In its motion for partial summary judgment and in its response to plaintiff's motion,

---

[2] Form 4340, or the Certificate of Assessment and Payments, is a computer-generated form that indicates the dates and amounts of assessments and payments for a given tax year. See Tucker v. C.I.R., 506 F. App'x 166, 168 (3d Cir. 2012); United States v. Rempel, 202 F. Supp. 2d 1051, 1053 (D. Alaska 2001) ("Form 4340 certificates of assessment are official documents which establish that assessments were made and that the assessments made were valid."). "IRS Form 4340 constitutes valid evidence of a taxpayer's assessed liabilities and the IRS's notice thereof." Perez v. United States, 312 F.3d 191, 195 (5th Cir. 2002). We address defendant's argument that the Form 4340 is insufficient to meet plaintiff's burden of production as to penalties below.

[3] The original returns have not been located. (See Status Report of Dec. 15, 2014, Doc. No. 24.)

defendant—Sadler's estate—does not meaningfully dispute the underlying tax liability but argues that it should be partially abated for two reasons. First, defendant argues that there was never an "overpayment" for the IRS to transfer from Sadler's 2001 and 2002 taxes, because the IRS later assessed a deficiency for those years. As a result, the amounts transferred from Sadler's 2001 and 2002 withholdings to his 1994 tax liability based on his claimed refund amount should be credited against his tax liability for 2001 and 2002. (Def.'s Mem. Opp. Pl.'s Mot. Summ. J 1–4.) Second, defendant argues that the IRS has failed to meet its burden of production for the penalties assessed on Sadler's 2003 and 2004 returns because it has failed to produce the original returns that Sadler submitted. (Id. at 4–5.) Defendant presents no argument as to the 2005 assessment. As discussed below, the Court concludes that defendant's arguments are without merit and that plaintiff has satisfied its evidentiary burden, entitling it to summary judgment for the full amount of the assessments from tax years 2001 to 2005.

   II.   Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A material fact is genuinely in dispute where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. Disputed facts "must be viewed in the light most favorable to the nonmoving party," Scott v. Harris, 550 U.S. 372, 380 (2007), and "all justifiable inferences are to be drawn in [the nonmovant's] favor," Anderson, 477 U.S. at 255. However, summary judgment may be granted if the nonmovant's evidence is "merely colorable or not significantly probative." Armbruster v.

Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (citation omitted). When presented with cross-motions for summary judgment, the Court considers each motion on its own merits, construing all facts and drawing all inferences in favor of the non-movant. J.S. ex rel. Snyder v. Blue Mountain Sch. Dist., 650 F.3d 915, 925 (3d Cir. 2011) (citing Pichler v. UNITE, 542 F.3d 380, 386 (3d Cir. 2008)).

III. Analysis

1. 2003 and 2004 penalty assessments

It is well-established that IRS assessments as presented in Forms 4340 are entitled to a presumption of correctness. United States v. Zarra, 477 F. App'x 859, 860 (3d Cir. 2012) (holding that a Form 4340 is "presumptive proof of a valid assessment"); Psaty v. United States, 442 F.2d 1154, 1159 (3d Cir. 1971) ("The presumption of correctness afforded the Commissioner's determination allows the Government []to establish a prima facie case of liability merely by offering into evidence a certified copy of the Commissioner's assessment."); Dallin ex rel. Estate of Young v. United States, 62 Fed. Cl. 589, 600 (Fed. Cl. 2004) ("It is well established that a certified copy of the taxpayer's Form 4340 triggers the presumption of correctness in favor of the government, and [the Form] is 'routinely used to prove that a tax assessment has in fact been made.'" (quoting Rocovich v. United States, 933 F.2d 991, 994 (Fed.Cir.1991))). Defendant, however, argues that the Forms 4340 are insufficient to satisfy the burden of production that is shifted to the IRS by virtue of 26 U.S.C. § 7491(c), which provides that "the Secretary shall have

the burden of production in any court proceeding with respect to the liability of any individual for any penalty, addition to tax, or additional amount imposed by this title."

The burden of production is not a heavy one—it requires merely that a party come forward with some evidence to support its position. Greenwich Collieries v. Dir., Office of Workers' Comp. Programs, 990 F.2d 730, 735 (3d Cir. 1993) ("[T]he burden of production requires a party to *produce* evidence regarding a fact."). Here, the IRS has presented Forms 4340 for each tax year in question. These forms are indisputably admissible evidence, see Hughes v. United States, 953 F.2d 531, 539–40 (9th Cir. 1992), and we conclude that they are sufficient to satisfy the IRS's burden of production. Contrary to defendant's position, numerous courts have held, subsequent to the passage of § 7491(c), that Forms 4340 are sufficient to establish a taxpayer's liability not only for the underlying tax assessed but for penalties and interest as well. See, e.g., McLaine v. C.I.R., 138 T.C. 228, 245–46 (T.C. 2012) (expressly holding that a Form 4340 "satisfie[s] [the Commissioner's] burden of production under section 7491(c)" with respect to additions to tax for failure to timely pay); United States v. Welch, No. 11-2292, 2013 WL 1444053, at *9 (D. Colo. Mar. 13, 2013) ("An assessment of tax *as well as an assessment for failure to file tax returns and make estimated tax payments* are entitled to a presumption of validity." (emphasis added) (quoting United States v. Novotny, 90 A.F.T.R.2d 2002-5684 (D. Colo. 2002)); United States v. Chrein, 368 F. Supp. 2d 278, 282 (S.D.N.Y. 2005) ("It is well established that the IRS's tax calculations (*including calculations of interest and penalties*) are presumptively valid and create a prima facie case of liability, such that the Government is entitled to have the assessment reduced to judgment unless the taxpayer overcomes the presumption by the IRS that the assessment is correct." (emphasis added) (internal quotation marks omitted)), aff'd, 274 F. App'x 56 (2d Cir. 2008).

Further, applying the penalties for failure to timely file, failure to prepay tax, and failure to timely pay tax, requires nothing more than an examination of the underlying assessment, the date of the return, and the amount of the deficiency. Because the underlying assessment is entitled to a presumption of correctness, it follows logically that penalties based entirely on the date and amount of that assessment should also be presumed correct.

Once the IRS has introduced evidence establishing its *prima facie* case that the assessment, including penalties for underpayment, are valid and correct, "the burden then shifts to [the taxpayer] to show his underpayment was not the result of negligence and that he did what a reasonably prudent person would have done under the circumstances." Sala v. United States, 552 F. Supp. 2d 1167, 1178 (D. Colo. 2008), rev'd on other grounds, 613 F.3d 1249 (10th Cir. 2010). Defendant presents no evidence or argument as to Sadler's negligence or lack thereof, relying entirely on its argument that the government has failed to meet its burden of production for assessment of the penalties. Because we reject that argument, we conclude that the government is entitled to summary judgment establishing Sadler's estate's liability for his 2003 and 2004 taxes as assessed on the Forms 4340.

2. 2001 and 2002 credit transfers

Plaintiff's argument that the IRS should not have treated Sadler's claimed overpayments as such when it conducted an audit of his 2001 and 2002 returns is similarly without merit. The IRS is permitted by regulation to issue a refund of a claimed overpayment based solely on a taxpayer's statement of tax owed. 26 C.F.R. § 301.6402-4. This is the IRS's usual practice, and the practice of issuing refunds before examining returns does not estop the IRS from then assessing a deficiency on the return in question and seeking to recover the funds previously allowed as a refund from a

taxpayer. Gordon v. United States, 757 F.2d 1157, 1159–60 (11th Cir. 1985) ("[T]he Commissioner, confronted by millions of returns and an economy which repeatedly must be nourished by quick refunds, must first pay and then look. This necessity cannot serve as the basis of an 'estoppel.'" (quoting Warner v. Comm'r of Internal Revenue, 526 F.2d 1, 2 (9th Cir.1975))); accord Beer v. Comm'r of Internal Revenue, 733 F.2d 435, 437 (6th Cir.1984). Further, the IRS is permitted by statute to credit any claimed overpayment to an outstanding tax debt not barred by the statute of limitations:

> In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c), (d), (e), and (f) refund any balance to such person.

26 U.S.C § 6402(a); see also Donahue v. United States, 33 Fed. Cl. 600, 605 (Fed. Cl. 1995) (noting that 26 U.S.C § 6402(a) and 26 C.F.R. § 301.6402-4 "specifically authorize[] the IRS to credit such a reported tax overpayment against other tax obligations prior to the IRS completing an audit of the tax return that reports the tax overpayment"). The statute provides that the IRS may apply a claimed overpayment as a credit not only toward unpaid tax liability, but also toward past-due child support, other debts owed to federal agencies, state tax debts, and unemployment compensation debts. 26 U.S.C. § 6402(c)–(f).

Given this statutory context, it is clear that defendant's argument must fail. There appears no reasoned difference between applying a claimed overpayment as a credit and returning it to the taxpayer as a refund, and the law is clear that the IRS may allow a refund and then seek to recover it following an assessment of deficiency. See Warner, 526 F.2d at 2. The result should be no different when the IRS applies the claimed overpayment to outstanding tax debt rather than

refunding it to the taxpayer. While it is true that the IRS could conceivably administratively "undo" the credit, the same is not clearly true for the other types of credits allowed by the statute—it seems unlikely that the IRS would be able to recover, for instance, a credit applied to past child support if it determined that a taxpayer's asserted overpayment was in error. Cf. Weber v. C.I.R., 138 T.C. 348, 361–62 (T.C. 2012) ("After the IRS thus allowed [the taxpayer] the credit against the penalty liability, the 2006 overpayment was no longer . . . an available credit. It had been used up." (internal quotation marks omitted)). We conclude that the IRS properly applied Sadler's claimed overpayments in 2001 and 2002 as credits toward his outstanding tax liability for 1994 and that it is now entitled to recover the entire amount of tax assessed for 2001 and 2002.[4]

IV.     Conclusion

    For the above-stated reasons, we grant plaintiff's motion for summary judgment and deny defendant's cross-motion for partial summary judgment. The estate of Robert L. Sadler, Jr. is liable for the entire assessed amount of unpaid taxes, interest, and penalties in the amount of $44,825.54—plus statutory additions to tax accruing from April 20, 2015 until paid—for the outstanding taxes, penalties, and interest assessed against Robert L. Sadler, Jr. for the 2001, 2002, 2003, 2004, and 2005 tax years.

BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.

---

[4] We note also that equitable considerations weigh in favor of the IRS, as the statute of limitations on the 1994 tax debt has now expired and the IRS would have no other means of collecting that debt were it to reverse the credits applied from Sadler's 2001 and 2002 returns. See 26 U.S.C. § 6502(a)(1) (providing a ten-year statute of limitations for collection of assessed tax debt).